UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JONATHAN E. PESKOFF, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL A. FABER, <br><br> Defendant. | Civil Action No. 04-526 (HHK/JMF) |

**MEMORANDUM OPINION**

This case was referred to me for resolution of eight discovery motions, the first five of which are Motions for a Protective Order. Upon consideration of the motions, oppositions, and replies and for the reasons stated herein, Defendant's Motion for Protective Order Concerning Plaintiff's Subpeona to United Bank for Defendant's Personal Bank Records [#15] is denied in part and granted in part; Defendant's Motion for a Protective Order and Supporting Memorandum Concerning Plaintiff's Subpeona to Non-Party Mark Levine [#27] is denied in part and granted in part; Defendant's Motion and Supporting Memorandum Requesting Entry of a Protective Order Governing the Confidentiality of Discovery Materials [#31] is denied in part and granted in part; Plaintiff's Motion for Protective Order Concerning Defendant's Subpeona *Duces Tecum* to Joseph Estabrook [#24] is granted *nunc pro tunc*; Plaintiff's Motion for Protective Order Concerning Defendant's Subpeona *Duces Tecum* and *Ad Testificandum* to Joel Lesch [#25] is granted *nunc pro tunc*; Plaintiff's Motion for Extension of Discovery Period and Corresponding Modification of Scheduling Order [#16] is granted;  Plaintiff's Motion for

Additional Depositions [#20] is granted; and Plaintiff's Consent Motion for Telephonic Conference Prior to Filing Motions to Compel Discovery [#21] is denied as moot.

**BACKGROUND**

I.    Plaintiff's Claims

Plaintiff Jonathan E. Peskoff ("Peskoff") brings this action to recover damages for financial injury he suffered as a result of alleged conduct by defendant Michael A. Faber ("Faber") in connection with the operation of the NextPoint venture capital fund and its related entities ("the NextPoint entities"). Complaint at 1. The plaintiff's specific allegations are: fraud in the inducement; breach of fiduciary duty; breach of contract; conversion; common law fraud and deceit; unjust enrichment; and violations of 18 U.S.C. §§ 1962(c) and 1964(c) (Civil RICO). Id. at 15-22.

II.    The NextPoint Entities

NextPoint GP, LLC ("the General Partner") is the general partner of a venture capital fund called NextPoint Partners, LP ("the Fund"). Id. at 1. At all relevant times, both the plaintiff and defendant were managing members of the General Partner, though whether they were ever the *sole* managing members is disputed. Id. at 3; Answer at 15. Although the plaintiff is no longer a managing member as of February 13, 2004, he claims the retention of a membership interest. Complaint at 3. No LLC agreement governing the operation and composition of the General Partner was ever signed. Id. at 3; Answer at 19-20.

The NextPoint Management Company, Inc. ("the Management Company") was organized by the defendant as a vehicle for receiving the management fees due from the Fund to the General Partner and for paying salaries and other expenses. Its purpose was to enable the

General Partner to fulfill its management responsibilities to the Fund under the LP agreement. Complaint at 8; Answer at 26. The defendant believes that he was and is the sole owner of the Management Company. Complaint at 14; Answer at 26. The plaintiff contends that he and the defendant were co-owners of the Management Company in equal share. Complaint at 14.

Plaza Street Holdings, Inc. ("Plaza Street Holdings") is a corporation that was paid by the Management Company for consulting services. Id. at 10. Plaza Street Holdings was and is controlled solely by the defendant. Complaint at 10; Answer at 29.

## DISCUSSION

I.   Motions for Protective Order

   A.   *Legal Standards*

Federal Rule of Civil Procedure ("Rule") 26(c) provides:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

"'Although the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule.'" Tavoulareas v. Washington Post, 111 F.R.D. 653, 661 (D.D.C. 1986) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.21 (1984)).

To show good cause for entry of a protective order, "the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements . . . ." Low v. Whitman, 207 F.R.D. 9, 10-11 (D.D.C. 2002) (citing Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001) (citations omitted)). In addition, "district courts assessing the existence of

3

good cause must exercise their discretion in light of the relevant facts and circumstances of a particular case." Tavoulareas, 111 F.R.D. at 658 (citing Nixon v. Warner Communications, Inc., 435 U.S. 589, 599 (1978)).

It bears emphasis that a party is only entitled to discovery of information relevant to the claims or defenses asserted in the case. Fed. R. Civ. P. 26(b)(1). When fraud or mistake is alleged, relevance must be assessed in light of the requirements of Rule 9(b), which states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). See also United States *ex rel.* Fisher v. Network Software Assocs., 227 F.R.D. 4, 9-10 (D.D.C. 2005). In addition to ensuring that a defendant has notice of the claim, Fisher, 227 F.R.D. at 9 (citing Anderson v. USAA Cas. Ins. Co., 221 F.R.D. 250, 252-53 (D.D.C. 2004)), Rule 9(b) aims to "prevent a claim from being filed as a 'pretext for the discovery of unknown wrongs.'" Id. (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)).

    B.    *Analysis*

          1.    Defendant's Motion for Protective Order Concerning Plaintiff's Subpeona to United Bank for Defendant's Personal Bank Records

On October 20, 2004, the plaintiff served a subpeona *duces tecum* on non-party United Bank, requesting all bank records relating to any NextPoint entity and all bank records relating to the defendant. Plaintiff's Opposition to Defendant's Motion for Protective Order ("Pl.'s Opp'n #18") at 2. In response, the defendant filed a motion for a protective order to prevent the execution of the subpeona. Defendant's Motion for a Protective Order Concerning Plaintiff's Subpeona to United Bank for Defendant's Personal Bank Records ("Def.'s Mot. #15") at 1.

Specifically, the defendant claims that:

1. The personal bank records are irrelevant;

2. The sole purpose of the subpeona is to harass and embarrass; and

3. The request for NextPoint's records is duplicative because NextPoint has already agreed to produce its bank records.

Memorandum of Points and Authorities in Support of Defendant's Motion for a Protective Order ("Def's. Mem. of P. & A.") at 1-2.

As for the discovery of Union Bank's records relating to the NextPoint entities, the defendant's only argument for a protective order is that such a request is duplicative because the plaintiff can obtain the same records directly from NextPoint. However, because it remains unclear to this Court whether the plaintiff has obtained, or will in fact obtain, those same records, the potential for duplicative discovery cannot be determined. Absent any specific representation of duplication, undue burden, or expense, this Court cannot find that the defendant has shown good cause for the entry of a protective order as to NextPoint's records.

The analysis is different regarding the plaintiff's request for the defendant's personal bank records. The application of Rule 9(b) to discovery requires the Court to assess the relevance of the information sought in light of particularized claims, rather than general assertions. Therefore, to order the production of the defendant's personal bank records, the Court would have to find a connection between the defendant's accounts and specific allegations in the plaintiff's complaint. On this record, the Court fails to find such a connection.

In his opposition, the plaintiff cites five claims that he believes put the defendant's personal records at issue. The first is a general allegation of "egregious fraudulent and deceitful

5

conduct by [the defendant] in connection with the operation of a venture capital fund and its related entities." Complaint at 1. As written, this claim only implicates the defendant in a business capacity and does not describe any specific activity relating to the defendant's personal finances.

The second allegation is that the defendant "used the Management Company as an enterprise . . . with the purpose of diverting a substantial portion of the funds to pay fees for bogus consulting services to [defendant]-affiliated entities, to discharge his own personal expenses, and to make personal investments unrelated to the Fund." Complaint at 4. The plaintiff argues that the personal account information is relevant to this claim because it is necessary to determine whether the fees paid by the Management Company "made it back to the [d]efendant's pocket." Pl.'s Opp'n #18 at 6. The defendant, however, contends that the plaintiff's claim has not put any transactions at issue other than the expenditures by the Management Company and has failed to show any connection between those expenditures and the defendant's personal accounts. Reply Memorandum in Further Support of Defendant's Motion for a Protective Order re Subpeona to United Bank ("Def.'s Reply #22") at 2.

While the plaintiff's claim does allege the diversion of money from the Management Company for the defendant's personal use, it fails to specifically implicate the role of the defendant's personal bank accounts. Even if the defendant did use Management Company funds to discharge personal expenses or make personal investments, the plaintiff has failed to explain why any such transactions could not be exposed via the financial records of the NextPoint entities (which would include the financial records of the Management Company) and the defendant-affiliated consulting services. Until a persuasive argument is made based on a review

of the NextPoint entities' financial records, this Court will not order the production of the defendant's personal account information. To do otherwise, in this Court's view, would allow an unwarranted fishing expedition.

The plaintiff's third allegation is that the defendant unilaterally increased his own salary while offering as justification the fact that he had put up a personal Certificate of Deposit for a line of credit for the Management Company and invested other personal monies in the Fund. Complaint at 9. According to the plaintiff, allegations of such co-mingling make the defendant's personal bank records "indisputably relevant." Pl.'s Opp'n #18 at 5. The plaintiff also argues that documents related to the line of credit are relevant because they could contain information regarding the ownership of the Management Company. Id. at 6. The defendant counters that there is nothing unusual about his using personal capital to grow the business. Def.'s Reply #22 at 2-3.

While the defendant's personal finances are implicated by this claim in a general manner, the gravamen of the plaintiff's complaint is that the transactions made by the defendant were not in accordance with the plaintiff's understanding as to how financial decisions would be made at NextPoint. Absent the plaintiff's procedural objections, it is only alleged that the defendant was paid a salary, put up a personal Certificate of Deposit for a line of credit, and invested other personal monies in the NextPoint entities. An examination of the accounts of the NextPoint entities and the defendant-affiliated consulting companies should reveal the substance of these transactions. Further, since the line of credit was issued to the Management Company, and not to the defendant personally, such information should be produced by execution of the subpeona for "all bank records relating to any NextPoint entity." Pl.'s Opp'n #18 at 2. On this record, this

Court will not order the production of the defendant's personal account information without the plaintiff ever having advanced an argument based on a review of the NextPoint entities' financial records.

The fourth allegation is that the defendant caused the Management Company to make $400,000 in payments to Plaza Street Holdings for non-existent consulting services, the purpose of which was to divert funds to the defendant individually. Complaint at 10. Again, the claim is that the defendant allegedly made payments to a defendant-owned consulting company for non-existent services. The transactions at issue here are between two businesses, and anything questionable in this regard should be discoverable by examining the records of the NextPoint entities and the defendant-owned consulting companies.

Finally, the plaintiff states that the defendant "took $105,000 that was due from himself, his wife, and another limited partner to satisfy their then-currently-due capital contributions to the Fund and, instead of remitting such amounts to the Fund's account as required under the LP Agreement, caused such amounts to be transferred to the Management Company (in one instance by endorsing over to the Management Company a check payable to the Fund)." Complaint at 13. The heart of this claim, much like the previous assertions, is that the defendant engaged in prohibited borrowing and advancement of fees as between two businesses. There is no allegation, however, that any of the borrowed or advanced management fees made their way into the personal accounts of the defendant. In addition, the plaintiff has not explained how the defendant's bank records would bear on the claim, other than to provide withdrawal dates for some or all of the $105,000 at issue.

The Court recognizes that the particularity requirement of Rule 9(b) does not abrogate the

simplified notice pleading standard set forth in Rule 8, <u>Allen v. Beta Constr.</u>, 309 F. Supp. 2d 42, 46 (D.D.C. 2004) (citing <u>United States v. Cannon</u>, 642 F.2d 1373, 1386 (D.C. Cir. 1981) (internal citation and quotation omitted)).  The Court also acknowledges that there can be flexibility in the application of Rule 9(b) where the facts constituting the circumstances of the alleged fraud are peculiarly within the defendant's knowledge or control.  <u>Kowal</u>, 16 F.3d at 1279 n.3 (citation omitted); <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993).  Further, the plaintiff need not provide the details at this preliminary stage of litigation that will be necessary to succeed on the merits of the case.  <u>Allen</u>, 309 F. Supp. 2d at 47.  However, a plaintiff who makes an allegation on information or belief must also state a factual basis for that belief.  <u>Kowal</u>, 16 F.3d at 1279 n.3 (citations omitted).  The transactions at issue in this case are between the NextPoint entities and defendant-affiliated businesses, and the plaintiff has not made any statement of fact implicating the involvement of the defendant's personal accounts.  On balance, the plaintiff's non-specific desire to "follow the money," Pl.'s Opp'n #18 at 7, cannot outweigh the defendant's privacy interests or his interest in the protection against claims filed as a "pretext for the discovery of unknown wrongs." <u>Kowal</u>, 16 F3d at 1279 n.3 (citation omitted).  Thus, on this record, the defendant is entitled to a protective order regarding his personal accounts.

      Finally, the plaintiff's attempt to discover the defendant's personal financial information by arguing its relevance to punitive damages is unavailing.  In <u>John Does I-VI v. Yogi</u>, 110 F.R.D. 629 (D.D.C. 1986), the court found that the defendant's personal financial information was relevant to the question of punitive damages but ordered that it "should not be revealed until necessary" to prove those damages.  <u>Yogi</u>, 110 F.R.D. at 633.  Such protection is particularly appropriate in this case, where there is no other basis for the release of the information and its

absence does not prevent the plaintiff from making otherwise relevant discovery.

    2.  Defendant's Motion for a Protective Order and Supporting Memorandum Concerning Plaintiff's Subpeona to Non-Party Mark Levine

On November 15, 2004, the plaintiff served a subpeona *duces tecum* and *ad testificandum* on non-party Mark Levine for all documents and testimony relating to the action <u>Seynhaeve et al. v. Plaza Street Holdings, Inc. and Michael Faber</u>, which was brought on June 14, 2000 in the United States District Court for the District of Maryland.  <u>Defendant's Motion for a Protective Order and Supporting Memorandum Concerning Plaintiff's Subpeona to Non-Party Mark Levine</u> ("Def.'s Mot. #27") at 1-2.  The <u>Seynhaeve</u> suit alleged common law fraud, conversion, and unjust enrichment and was settled out of court.  <u>Plaintiff's Opposition to Defendant's Motion for Protective Order Regarding Subpeona Duces Tecum and Ad Testificandum Served on Mark Levine</u> ("Pl.'s Opp'n #28") at 2-3.  Mr. Levine was a shareholder of Venture Management Consultants, LLC ("Venture"), one of the plaintiffs in the <u>Seynhaeve</u> litigation.  Def.'s Mot. #27 at 2.  Neither Mr. Levine nor Venture has any relationship with the NextPoint entities.  <u>Id.</u>

  The defendant claims that execution of the subpeona will be a waste of the parties' time and will serve only to embarrass and harass the defendant.  <u>Id.</u>  The defendant also claims that the discovery sought could not reasonably lead to admissible evidence because the allegation of prior bad acts does not tend to make the plaintiff's current claims more or less probable than they would be without the evidence.  <u>Id.</u>  Finally, and seemingly as an afterthought, the defendant concludes that if the subpeona is allowed to be executed, the Court should issue a protective order upholding the confidentiality of the information sought, as it is already "the subject of a strict confidentiality agreement."  Defendant's Reply in Further Support of Motion for a Protective Order Concerning Plaintiff's Subpeona to Non-Party Mark Levine ("Def.'s Reply

#30") at 5. The defendant does not describe the nature or extent of the confidentiality agreement to which he refers.

In response, the plaintiff contends that the discovery sought is specifically relevant to two of his claims. The first is that the defendant made false and misleading statements to induce the plaintiff to accept a NextPoint partnership. Pl.'s Opp'n #28 at 2. According to the plaintiff, the defendant made assurances that he had not been sued previously and was not the subject of threatened litigation. Id. at 2-3. The second claim is that the defendant, both in the Seynhaeve litigation and the current case, used Plaza Street Holdings "as an enterprise through which to defraud investors or business partners in his venture capital entities." Id. at 3 (citing Complaint at 21-22).

First and foremost, Mr. Levine cannot be instructed by this Court to provide any information regarding the Seynhaeve litigation that is currently protected by a confidentiality agreement ordered or approved by another court. Because Seynhaeve was litigated in the United States District Court for the District of Maryland, this Court can only assume that any existing court-ordered or court-approved agreement was entered by that court. Therefore, to access Seynhaeve litigation materials shielded from public view by a such confidentiality agreement, the plaintiff must seek intervention in the District of Maryland. See In re Vitamins Antitrust Litig., No. MISC. 99-197, 2001 WL 34088808 at *5 (D.D.C. 2001) ("Like every other circuit to consider the issue, this Circuit has held that permissive intervention is the proper procedure for a non-party to seek modification of a protective order."). Even if a confidentiality agreement was only stipulated between the Seynhaeve litigants and did not involve the Maryland District Court, this Court would have to review the terms of the agreement and be fully briefed by both parties

before Mr. Levine could be compelled to testify in a manner breaching that agreement. Therefore, Mr. Levine's testimony may be allowed by this Court only to the extent that it is relevant and does not violate the terms of any court-ordered, court-approved, or privately stipulated confidentiality agreement. This Court expects counsel to scrupulously comply with this requirement.

The discovery sought is relevant to the first-cited claim of fraud in the inducement because Mr. Levine, as a shareholder of Venture, might have information regarding whether a lawsuit had been threatened at the time of the defendant's alleged representation. The claim is also pled with the particularity required by Rule 9(b), see Complaint at 5, specifying the "time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." Fisher, 227 F.R.D. at 9.

The requested discovery is also relevant to the Civil RICO allegation, which requires the plaintiff to show a pattern of racketeering activity. See Wallace v. Abramson, No. 85-4039 JHP, 1988 WL 63065, at *4 (D.D.C. 1988) (holding that a one million dollar bank loan, "even though causing no injury to the plaintiff, may represent another of the series of acts which plaintiff charges as a part of the continuing pattern of racketeering activity"). While the particularity requirement of Rule 9(b) "applies with full force when fraud is identified as a predicate act to a pattern of racketeering activity under RICO," id. at *3 (citations omitted), the requirement "must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim." Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041, 1051 (7th Cir. 1998). In this case, Mr. Levine, as a shareholder of Venture, certainly has knowledge regarding whether the Seynhaeve litigation was threatened against the defendant at the time of his alleged misrepresentation to the plaintiff. The

same is true of the involvement of Plaza Street Holdings, Inc., in the events leading up to that litigation. There are also facts supporting the plaintiff's pleadings that are sufficient to allow discovery per Rule 9(b) (namely, the existence of similar allegations and the involvement of Plaza Street Holdings in both the <u>Seynhaeve</u> litigation and the instant case).

Because the requested discovery is relevant to both the fraud and Civil RICO claims, the defendant must demonstrate good cause in order for this Court to grant a protective order. To show good cause:

> [T]he movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements . . . Moreover, in the case of a protective order related to deposition testimony, courts regard the complete prohibition of a deposition as an [sic] 'extraordinary measures [ ] which should be resorted to only in rare occasions' . . . Accordingly, courts apply a balancing test weighing the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial."

<u>Low</u>, 207 F.R.D. at 10-11 (quoting <u>Jennings</u>, 201 F.R.D. at 275 (citations omitted)). In this case, the defendant has failed to meet its burden.

The defendant has made only general claims of potential harassment and embarrassment, unsupported by evidence of the specific harm that will result from Mr. Levine's compliance with the subpeona. <u>See</u> <u>Jennings</u>, 201 F.R.D. at 275 (requiring a demonstration of specific harm that will result from plaintiff's testimony). The defendant has also failed to show undue burden or expense on behalf of either himself or Mr. Levine, notwithstanding Mr. Levine's apparent desire to avoid the deposition. Def.'s Reply #30 at 4. The defendant does try to argue that any evidence proffered by Mr. Levine would go to prior bad acts and would therefore be inadmissable at trial. However, because the substance of Mr. Levine's testimony has not been made clear to the Court, there is no basis upon which to gauge the veracity of the defendant's claim.

The Court must therefore refuse, in part, the defendant's request for a protective order, as the plaintiff's subpeona is reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, Mr. Levine is instructed not to provide any information regarding the Seynhaeve litigation that is currently protected by a court-ordered, court-approved, or privately stipulated confidentiality agreement.

        3.        Defendant's Motion and Supporting Memorandum Requesting Entry of a Protective Order Governing the Confidentiality of Discovery Materials

Neither the plaintiff nor the defendant has any objection to the entry of a protective order governing the confidentiality of discovery materials in this case, and the parties have consulted with each other as to the proposed terms. Defendant's Motion and Supporting Memorandum Requesting Entry of a Protective Order Governing the Confidentiality of Discovery Materials ("Def.'s Mot. #31") at 1; Plaintiff's Opposition to Defendant's Motion Requesting Entry of a Protective Order Governing the Confidentiality of Discovery Materials ("Pl.'s Opp'n #34") at 1. However, despite an exchange of drafts in which the parties reached consensus on a majority of the language, disagreement remains on two key points: 1) whether the protection should extend to business/commercial information as well as personal information; and 2) whether the agreement should provide the ability to designate documents as confidential that are already in the possession of the opposing party. Def.'s Mot. #31 at 1-2; Pl.'s Opp'n #34 at 1-2.

The agreement proposed by the defendant defines "confidential information" as "all confidential and proprietary business, commercial, or personal financial information of the parties, including tax, salary, and/or bank account information." Def.'s Mot. #31, Ex. C. In support of the proposed language, the defendant claims that business/commercial information is routinely protected under Rule 26(c)(7), which provides for the protection of "trade secret[s] or

other confidential research, development, or commercial information . . . ." Id. at 2; Fed. R. Civ. P 26(c)(7). The defendant's proposal also provides that the "[f]ailure to designate documents or information [as confidential] at the time of production will not be construed as waiver so long as the documents or information are designated before trial of this action." Def.'s Mot. #31, Ex. C. The defendant wishes to reserve the right of retroactive designation because he claims to have moved forward with discovery pending the Court's entry of a confidentiality agreement, "withholding nothing on the ground of confidentiality." Id. at 2. The plaintiff, on the other hand, has thus far declined to produce any "personal, private" information in the absence of a protective order. Pl.'s Opp'n #34 at 4.

    In opposition, the plaintiff claims that the impetus for the formation of a confidentiality agreement was the plaintiff's subpeona *duces tecum* on United Bank, which included a request for information on any *personal* account(s) held by the defendant. Id. at 3. Given the plaintiff's understanding that the defendant's concern was personal privacy, the plaintiff asserts that there was no reason for him to believe that a forthcoming confidentiality agreement would govern any commercial information already produced by the defendant. Id. at 4, 7. The plaintiff further asserts that the retroactive designation of documents could prove problematic where documents have already been used in other contexts related to the case and that the defendant's claim is weakened by his having filed for a protective order in lieu of producing his personal bank records. Id. at 7. The plaintiff also believes that the language in the defendant's proposed order is overbroad and could apply to most, if not all, discovery materials. Pl.'s Opp'n #34 at 7. The plaintiff has therefore suggested a protective order initially limited to "personal financial information of the parties." Id., Ex. 1. The proposed language would not allow the retroactive

designation of documents, but would allow either party to modify the scope of the agreement for good cause shown and upon motion to the Court.  Id.

The acrimonious tenor of the pleadings and motions in this action, more than any of the arguments proffered by the plaintiff or the defendant, convinces this Court of the futility of any confidentiality order that does not encompass both personal and business/commercial information.

> It is clear from experience that pretrial discovery . . . has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery may also seriously implicate privacy interests of litigants and third parties.  The Rules [of Civil Procedure] do not distinguish between public and private information . . . There is an opportunity, therefore, for litigants to obtain--incidentally or purposefully--information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.

Seattle Times, 467 U.S. at 34-35.

Therefore, pursuant to Rule 26(c) and in the interests of protecting the information of parties and non-parties from improper disclosure, the Court will enter a confidentiality order with the following parameters:

1. "Confidential information" shall be defined as: a) any trade secret, or other confidential research, development, or commercial information, as such terms are used in Federal Rule of Civil Procedure 26(c)(7), of a party or protected person that, if disclosed, would materially affect the party or protected person's business, commercial, or financial interests; or b) any financial information of a party or protected person, including tax, salary, or bank account information, that, if disclosed, would prove materially damaging to that party's or person's reputation or invasive of his or her privacy.

2. A "protected person" shall be defined as any non-party who voluntarily or in response to discovery in this action produced or produces any information to any party in connection with this action.

3. Any document, deposition testimony, deposition transcripts and exhibits, or other response to requests for information produced in response to discovery requests in this action may be designated by any party or protected person as "confidential," to the extent that such information constitutes confidential information as defined above.

4. A party that has previously produced information to another party in connection with this action, whether voluntarily or in response to a discovery request, may designate such information as confidential. A party shall make confidentiality designations for documents and information within ten days of the entry of the confidentiality order, and in the meantime, parties shall treat all material as confidential. However, the previous disclosure of materials not heretofore designated as confidential shall not be actionable, provided that no additional disclosure of those materials occurs in violation of the confidentiality order.

5. Information and documents previously produced by a protected person to a party in connection with this action shall be treated as if designated confidential, unless and until the person submitting the information authorizes disclosure.

6. A party or protected person may designate as confidential any information it hereinafter produces, either voluntarily or pursuant to discovery in this action, to any party in connection with this action.

The full text of the confidentiality order will be issued separately, concurrent with this Memorandum Opinion.

    4.    <u>Plaintiff's Motion for Protective Order Concerning Defendant's Subpeona *Duces Tecum* to Joseph Estabrook</u>

On November 24, 2004, the plaintiff filed a motion for a protective order concerning the defendant's subpeona *duces tecum* of Mr. Joseph Estabrook. The plaintiff requests that document production, originally scheduled for November 26, 2004, be postponed due to the closure of Mr. Estabrook's offices for the Thanksgiving holiday. The motion is unopposed, and this Court therefore grants the motion *nunc pro tunc*, with production to take place on a date agreed upon by the parties, if it has not already occurred.

    5.    <u>Plaintiff's Motion for Protective Order Concerning Defendant's Subpeona *Duces Tecum* and *Ad Testificandum* to Joel Lesch</u>

On November 24, 2004, the plaintiff also filed a motion for a protective order concerning the defendant's subpeona *duces tecum* and *ad testificandum* of Mr. Joel Lesch. The plaintiff first requests that document production, originally scheduled for November 26, 2004, be postponed due to the closure of Mr. Lesch's offices for the Thanksgiving holiday. The plaintiff also asks that the deposition of Mr. Lesch be rescheduled from November 30, 2004, as plaintiff's counsel had previously noticed another deposition for that date. The motion is unopposed, and the Court therefore grants the motion *nunc pro tunc*, with document production and deposition to take place on dates agreed upon by the parties, if they have not already occurred.

II.    <u>Plaintiff's Motion for Extension of Discovery Period and Corresponding Modification of Scheduling Order</u>

Although discovery in this matter was scheduled to end on December 1, 2004, it would have been impossible for the parties to complete discovery without resolution of the motions

addressed herein.  Therefore, the Court extends the discovery deadline to August 19, 2005, solely for the purposes of complying with this Opinion and accompanying Order.

    III.    <u>Plaintiff's Motion for Additional Depositions</u>

On November 18, 2004, the plaintiff filed a motion to allow him to take three depositions beyond the five originally permitted by the Court's Scheduling Order.  <u>Plaintiff's Motion for Additional Depositions</u> ("Pl's. Mot.") at 4.  The defendant did not file an opposition to the request.

Given that the Scheduling Order will be altered to allow for the completion of outstanding discovery, the Court cannot see how allowing the additional depositions would be overly burdensome to the defendant.  The Court will therefore permit the plaintiff three depositions in addition to the five originally permitted, provided that they are completed before the close of the extended discovery period.

    IV.    Plaintiff's Consent Motion for Telephonic Conference Prior to Filing Motions to Compel Discovery

Plaintiff's consent motion for a telephonic conference prior to filing a motion to compel discovery is denied as moot.  Should any future discovery disputes arise, however, the parties shall jointly call chambers to set up a telephonic conference prior to the filing of any motion.

## CONCLUSION

A detailed Order accompanies this Memorandum Opinion.

                                                        _____

                                                        JOHN M. FACCIOLA
                                                        U.S. MAGISTRATE JUDGE

Date:   July 22, 2005