UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN E. PESKOFF,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL A. FABER,<br><br>　　　Defendant. | Civil Action No. 04-526 (HHK/JMF) |

MEMORANDUM OPINION

This case was referred to me for the resolution of discovery disputes. Currently pending before me is <u>Plaintiff's Motion to Compel Discovery</u> ("Mot. to Compel"). For the reasons stated herein, plaintiff's motion will be granted in part and denied in part.

I.     BACKGROUND

Plaintiff Jonathan Peskoff ("Peskoff") brought this lawsuit against defendant Michael Faber ("Faber") to recover damages for financial injury resulting from Faber's operation of a venture capital fund, called NextPoint Partners, LP, and the fund's related entities. Peskoff alleges fraud in the inducement, breach of fiduciary duty, breach of contract, conversion, common law fraud and deceit, unjust enrichment, and violations of 10 U.S.C. §§ 1962(c) and 1964(c) (Civil RICO). <u>Complaint</u> ("Compl.") ¶¶ 31-68.

NextPoint GP, LLC ("NextPoint GP") is the general partner of the venture capital fund. <u>Id.</u> at ¶ 1. Both Peskoff and Faber were managing members of NextPoint GP. <u>Id.</u> at ¶ 6. As of February 13, 2004, Peskoff was no longer a managing member, but he claims the retention of a

membership interest. Id.  No limited liability company agreement governing the operation and composition of NextPoint GP was ever signed. Id. at ¶ 7.

The NextPoint Management Company, Inc. ("NextPoint Management") was organized as a vehicle for receiving the management fees due from the venture capital fund to NextPoint GP and for fulfilling NextPoint GP's management responsibilities to the fund. Id. at ¶ 8.  Faber's responsibilities included handling routine finances, record keeping, and fund-raising activities. Id. ¶ 17.  Peskoff's responsibilities included oversight of the portfolio companies in which the venture capital fund invested and identification and evaluation of potential new investments. Id.

Plaza Street Holdings, Inc. ("Plaza Street") is a corporation controlled solely by Faber that was paid by NextPoint Management for "consulting services." Id. at ¶ 23(a).  Among other things, Peskoff alleges that Faber caused NextPoint Management to pay Plaza Street $400,000 for consulting services that were neither needed nor provided and that these payments were for the sole purpose of diverting funds from the NextPoint entities to Faber personally. Id.

Peskoff now moves the Court for two orders: (1) an order compelling non-party Plaza Street to produce, in response to a *subpoena duces tecum*, certain documents relating to the payments from NextPoint Management to Plaza Street; and (2) an order compelling Faber to produce additional e-mails sent to and authored by Peskoff while he was employed at NextPoint Management. Mot. to Compel at 1.

**II.     DISCUSSION**

    **A.     Plaza Street Documents**

At some point during discovery, Peskoff served a *subpoena duces tecum* on non-party Plaza Street.  Plaza Street has refused to produced the requested records and, therefore, Peskoff

has moved for an order compelling their production. Peskoff contends that he needs these documents to determine the truth behind Faber's inconsistent explanations as to the purpose of the $400,000 paid to Plaza Street, which has been described to him as both "consulting services" and an "organizational fee." Id. at 4. Peskoff contends that Plaza Street's characterization of the payments, in documents such as its books of account and tax returns, will help him determine their true purpose and that a jury will not be able to determine whether the payments constituted impermissible self-dealing without analyzing the entire course of the transaction. Id. at 4-5. Peskoff further asserts that he needs Plaza Street's financial documents in order to establish his civil RICO claim. Id. at 5.

In opposing Peskoff's motion, Faber and Plaza Street contend that Peskoff already has the information he seeks and that his subpoena is merely a fishing expedition designed to harass and intimidate Faber and the businesses with which he is affiliated. Defendant's and Non-Party Plaza Street's Memorandum in Opposition to Motion to Compel Discovery ("Opp'n") at 1-3. Specifically, Faber contends that Peskoff has already received financial documents that provide the sought after information and, therefore, requiring Plaza Street to produce the subpoenaed documents would be duplicative and an unnecessary burden. Id. at 2-3.

"The Federal Rules of Civil Procedure encourage the exchange of information through broad discovery." In re England, 375 F.3d 1169, 1177 (D.C. Cir. 2004). Under Rule 26(b)(1), a party is entitled to discovery that is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The party resisting discovery based on relevance "bears the burden of demonstrating that the information sought is not legally relevant." Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash., 103 F.R.D. 52, 58, n.3 (D.D.C. 1984). Likewise, the party

opposing discovery based on burden "must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome." Pleasants v. Allbaugh, 208 F.R.D. 7, 12 (D.D.C. 2002) (citing Pro-Football, Inc. v. Harjo, 191 F. Supp. 2d 77, 80 (D.D.C. 2002). Through his subpoena, Peskoff seeks the following categories of Plaza Street documents:

1. Documents which reflect Defendant's role, responsibilities, duties, ownership interest and/or profit participation in any Plaza Street entity.

2. Documents, including drafts of documents, which reflect consulting agreements or arrangements between any Plaza Street entity and any NextPoint entity.

3. Documents which reflect any consulting services performed by any Plaza Street entity for any NextPoint entity.

4. Documents which reflect any payments or transfers of funds from any NextPoint entity to any Plaza Street entity.

5. Plaza Street's bank records, corporate tax returns, financial statements and books of account.

6. Documents, including documents dated prior to 2000, which reflect any payments or transfers of funds from any limited partners in Plaza Street Capital, L.P. to Plaza Street Holdings, Inc.

Mot. to Compel at 7. Documents relating to Peskoff's claim that Faber's payments to Plaza Street constituted impermissible self-dealing are clearly relevant. The categories of documents described above, with the exception of the sixth category, are reasonably calculated to lead to the discovery of evidence relating to that alleged self-dealing. Accordingly, I find that they fall within the scope of discovery permitted under Rule 26(b)(1).

In opposing Peskoff's motion, Faber and Plaza Street have failed to make any specific showing that the production sought would be unduly burdensome, that the requested documents

are beyond the scope of Peskoff's stated purpose in moving to compel their production, or that his intent is to harass or intimidate. With regard to the first category of documents, Faber and Plaza Street simply argue that "[i]t does not make sense to ask about a shareholders' 'profit participation' in a corporation" and that "documents reflecting Mr. Faber's 'role, responsibilities [and] duties' at Plaza Street . . . is vastly overbroad in relation to the disputed NextPoint payment." Opp'n at 3-4. To the contrary, I find that the discovery of documents relating to Faber's financial interests in Plaza Street are reasonably calculated to lead to the discovery of evidence relating to Faber's motivations and to the benefits he would likely receive as the result of the transfer of monies from NextPoint Management to Plaza Street. Further, I find that documents relating to Faber's responsibilities at Plaza Street are reasonably calculated to lead to the discovery of evidence relating to his involvement in or knowledge of the payments at issue.

      Faber and Plaza Street do not object to the second and third categories of documents. Id. at 4.

      With regard to the fourth category, which seeks documents reflecting payments or transfers from any NextPoint entity to any Plaza Street entity, Faber and Plaza Street assert that Peskoff has already received documents from the various NextPoint entities as well as from United Bank and, therefore, the production of the requested Plaza Street documents would be duplicative. Id. at 4. As Peskoff points out, however, Plaza Street's characterization and use of the payments may shed light on the underlying purpose of those payments, especially in light of Faber's ownership of Plaza Street. In fact, in a prior opinion, I indicated the relevance of these documents. Specifically, in response to a motion for a protective order preventing the enforcement of a subpoena on United Bank for records relating to Faber's personal bank

5

accounts, I held that Peskoff was not entitled to such records, providing the following reasoning:

> The fourth allegation is that the defendant caused the Management Company to make $400,000 in payments to Plaza Street Holdings for non-existent consulting services . . . . The transactions at issue here are between two businesses, and anything questionable in this regard should be discoverable by examining the records of the NextPoint entities *and the defendant-owned consulting companies*.

Peskoff v. Faber, 230 F.R.D. 25, 29-30 (2005) (emphasis added). In so ruling, I implicitly recognized the discoverability of Plaza Street documents relating to the payments at issue.

With regard to the fifth category, which seeks Plaza Street's bank records, tax returns, financial statements, and books of account, Faber and Plaza Street argue that it is an over broad fishing expedition. Opp'n at 5. But, as Peskoff explains, he needs access to this financial information so that his experts can ascertain how Plaza Street treated the payments at issue and whether they were bone fide payments. Mot. to Compel at 5. In opposing the production of Plaza Street's financial documents, Faber and Plaza Street do not argue that the category is *entirely* irrelevant; rather, they only assert that it is over broad. Despite the fact that there is discoverable information within Plaza Street's financial documents, Faber and Plaza Street make no attempt to specify what information they will agree to let Peskoff have. Moreover, this is not a situation, as Faber and Plaza Street would have the Court believe, where a non-party is burdened by a subpoena relating to litigation to which it is has no or only a peripheral interest. Here, Faber is the principal stockholder, sole officer, and sole employee of Plaza Street; Faber and Plaza Street even appear to have the same counsel. Opp'n at 7; Compl. ¶ 23(a). Accordingly, there is no reason before me to deny Peskoff access to Plaza Street's financial documents.

Contrary to the first five categories, I find that Peskoff has not provided a sufficient

explanation as to why the sixth category, documents relating to transfers from Plaza Street Capital, LP to Plaza Street Holdings, Inc., is reasonably calculated to lead to the discovery of admissible evidence.  In fact, Peskoff has provided absolutely no explanation – he has not even explained Plaza Street Capital, LP's relationship to the parties and entities discussed thus far in this opinion.  Moreover, whatever Peskoff's purpose in requesting these documents, that purpose can likely be accomplished through review of Plaza Street's financial documents, which, as just discussed, I am ordering produced.

Accordingly, I will grant Peskoff's request to compel Plaza Street to comply with the *subpoena duces tecum* for the first five categories of documents.  I will not, however, compel Plaza Street to produce the sixth category of documents.

### B.   E-Mails

Peskoff also seeks the production of e-mails that he received or authored while employed at NextPoint Management. Mot. to Compel at 8.  Peskoff argues that these e-mails "are highly likely to contain information relating to the ownership issues in this case, the suspect transactions identified in the Complaint and other relevant matters." Id.  During the course of discovery, Faber produced computer disks containing documents, including e-mails, that were obtained from Peskoff's computer, but these disks did not include any e-mails that Peskoff received or authored between mid-2001 and mid-2003. Id.  In moving to compel, Peskoff argues that Faber has failed to adequately explain why these two-years worth of e-mails have not been produced, where the e-mails might be located within NextPoint's computer system or archives, or what specific steps were taken to locate the emails. Id.

In opposition, Faber contends that "no electronic documents have been withheld" and

that, if the sought after e-mails are not on the computer disks provided, then they no longer exist. Opp'n at 6-7. Faber explains that NextPoint Management subleases space from Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC ("Mintz Levin") and its electronic files are stored on Mintz Levin's server. Id. at 6. When Peskoff's employment ended, counsel "caused the creation of an archive of all Peskoff electronic files, including documents stored on his computer hard drive, e-mail, and any other Peskoff electronic documents." Id. This entire archive was produced to Peskoff. Id.

As a threshold matter, there does not appear to be any dispute that the e-mails are likely to contain relevant information. Moreover, "[d]uring discovery, the producing party has an obligation to search available electronic systems for the information demanded." McPeek v. Ashcroft, 202 F.R.D. 31, 32 (D.D.C. 2001) (citing to Fed. R. Civ. P. 34(a)). The parties' disagreement turns instead on whether the missing e-mails still exist and can be located. The sought after e-mails could fall into three categories: e-mails to Peskoff, e-mails from Peskoff, and e-mails about Peskoff, and could be located in several possible places.

First, the e-mail account that Peskoff used while working at NextPoint Management might still contain the e-mails in his inbox, sent items, trash, or other named folders.

Second, the e-mails may be in the inbox, sent items, trash, and other folders of e-mail accounts of other employees, agents, officers, and representatives of the NextPoint entities, who may have been the author or recipient of the e-mails at issue.

Third, the e-mails may be on the hard drive of Peskoff's computer or within any depository for NextPoint e-mails. The e-mails may be accessible from those locations through simple search technology, such as by conducting a key word search *(i.e.*, a search on "Peskoff" or

his e-mail address). Thus, even if the e-mails cannot be located by searching particular files, they yet may be located on the hard drive or other depository by finding all files where a particular word appears.

Fourth, with the help of a computer forensic technologist, the e-mails, even if deleted, may be recoverable from other places within Peskoff's computer, such as its "slack space." See United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 46 n.7 (D. Conn. 2002) ("'Slack space' is the unused space at the logical end of an active file's data and the physical end of the cluster or clusters that are assigned to an active file. Deleted data, or remnants of deleted data can be found in the slack space . . . .").

Finally, the e-mails may even be recoverable from periodic backups tapes or disks made of Mintz Levin's server. See Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 319 (S.D.N.Y. 2003).

However, based on the information before the Court, I cannot determine at what level Faber searched for the requested Peskoff e-mails. All I know is that an archive was created "of all Peskoff electronic files, including documents stored on his computer hard drive, e-mail, and any other Peskoff electronic documents." Opp'n at 6. This statement tells me little, if anything about the scope of Faber's search.

**Accordingly, within ten business days from the date of this memorandum opinion, Faber shall file a detailed affidavit specifying the nature of the search it conducted. Peskoff shall have ten business days therefrom to respond to the adequacy of the search described in that affidavit. Once I receive Faber's affidavit and Peskoff's response, if any, I will consider whether additional searches are necessary. I should indicate that I may have to**

**hold an evidentiary hearing in which I take testimony from Faber's employees and other witnesses about the effectiveness and cost of any additional searches.**

      C.      **Attorney's Fees**

Peskoff requests that he be awarded all costs and attorney's fees incurred in connection with this motion to compel. Mot. to Compel at 8-9. Because Peskoff's motion was only granted in part and because I cannot find, as required by Rule 37(a)(4)(A), that Faber and Plaza Street's opposition to producing the requested documents was not substantially justified, an award of costs and attorneys' fees would not be appropriate under the circumstances. Therefore, Peskoff's request for attorney's fees and costs will be denied.

### III. CONCLUSION

For the forgoing reasons, plaintiff's motion to compel will be granted in part and denied in part.

                                                               _____
                                                              JOHN M. FACCIOLA
                                                              UNITED STATES MAGISTRATE JUDGE

Dated: