## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| JONATHON E. PESKOFF,                      ) | |
|                                          ) | |
|      Plaintiff,                          ) | |
|                                          ) | |
|      v.                                 ) | Civil Action No. 04-526 (HHK/JMF) |
|                                          ) | |
| MICHAEL A. FABER,                        ) | |
|                                          ) | |
|      Defendant.                          ) | |
| _____) | |

### MEMORANDUM OPINION AND ORDER

This case was referred to me for the resolution of discovery disputes. Pending before me remains the electronic discovery at issue in Plaintiff's Motion to Compel Discovery [#48] ("Pls. Mot."). For further consideration of plaintiff's motion, I ordered parties on July 11, 2006, to file affidavits relating to the search of electronic documents at issue. Having reviewed those affidavits, I will order the defendant to perform another and more complete search.

## I.      BACKGROUND

The detailed facts of this case have been summarized in prior opinions. Plaintiff Jonathon Peskoff ("Peskoff") seeks to recover damages from defendant Michael Faber ("Faber") for alleged financial injury resulting from Faber's operation of NextPoint Partners, LP, a venture capital fund, and its related entities. Specifically, Peskoff alleges fraud in the inducement, breach of fiduciary duty, breach of contract, conversion, common law fraud and deceit, unjust enrichment, and violations of 10 U.S.C. §§ 1962(c) and 1964(c) (civil RICO). See Complaint ("Compl.") ¶¶ 31-68.

Peskoff and Faber were the sole managing members of NextPoint GP, LLC ("NextPoint GP"), the general partner of the venture capital fund, though no governing limited liability agreement was ever signed.  Peskoff claims a retained membership interest in NextPoint GP since his departure as a managing member on February 13, 2004.  Faber's responsibilities included handling routine finances, record keeping, and fund-raising activities, while Peskoff's responsibilities included oversight of the portfolio companies in which the venture capital fund invested and identification and evaluation of potential new investments.

The NextPoint Management Company, Inc. ("NextPoint Management"), was organized to receive the management fees for NextPoint GP from the venture capital fund and for fulfilling NextPoint GP's management responsibilities to the fund.  Plaza Street Holdings, Inc. ("Plaza Street") is a corporation controlled solely by Faber that was paid by NextPoint Management for consultation services.  Part of Peskoff's allegations include Faber causing NextPoint Management to pay Plaza Street $400,000 for consulting services that were neither necessary nor provided and that these payments were for the sole purpose of diverting funds from various NextPoint entities to Faber.

Peskoff's motion to compel was partially resolved in my order of July 11, 2006. See Peskoff v. Faber, Civ. No. 04-526, 2006 WL 1933483, at *2-4 (D.D.C. July 11, 2006).   Still outstanding is Peskoff's request for additional production of emails that he received or authored while at NextPoint Management that "likely contain information relating to the ownership issues in this case, the suspect transactions identified in the Complaint and other relevant matters."  Pls. Mot. at 8.  There is no dispute as to the relevancy of the emails; the parties disagree as to (1) the existence of any other emails in

addition to those already produced, and (2) the financial responsibility of determining if and where additional emails may be located.

NextPoint Management subleases office space from the law firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC ("Mintz Levin"), which stores NextPoint Management's electronic files on its server. Id. Following Peskoff's departure from NextPoint Management in February of 2004, defendant's "counsel 'caused the creation of an archive of all Peskoff electronic files, including documents stored on his computer hard drive, email, and any other Peskoff electronic documents.'" Peskoff, Civ. No. 04-526, 2006 WL 1933483, at *4. (quoting Defendant's and Non-Party Plaza Street's Memorandum in Opposition to Motion to Compel Discovery ["Defs. Opp."]). Faber then produced data disks containing copies of documents and emails taken from Peskoff's NextPoint Management computer. Pls. Mot. at 7-8. However, Peskoff claimed the data disks Faber produced did not include any emails Peskoff received or authored between mid-2001 and mid-2003, nor do the disks contain authored emails that should be stored in the Sent folder of Peskoff's former email account. Id. at 8. Faber contends "Peskoff has every email and electronic file that existed on the computer system shortly after he quit," and therefore, "[t]here is nothing more to produce." Defs. Opp. at 7.

 Peskoff seeks an explanation as to "why Plaintiff's emails from this timeframe have not been produced, where they might be located within NextPoint's computer system or archives[,] or what specific steps have been taken to find these emails." Pls. Mot. at 8. As I explained in my prior opinion, the sought emails, if they exist, could be located in one or more of several places: (1) Peskoff's NextPoint Management email account; (2) the email accounts of other employees, agents, officers, and representatives

of the NextPoint entities; (3) the hard drive of Peskoff's computer or any other depository

for NextPoint emails, searchable with key words; (4) other places within Peskoff's

computer, such as its "slack space,"[1] searchable with the help of a computer forensic

technologist; and (5) backup tapes of Mintz Levin's servers.  Peskoff, Civ. No. 04-526,

2006 WL 1933483, at *4-5.  I could not determine the extent of Faber's search for the

requested Peskoff emails with only the information before me, nor could I determine the

likelihood that additional emails existed elsewhere on NextPoint Management's system.

Therefore, I ordered Faber to produce an affidavit describing in detail the nature of the

search conducted, and I provided Peskoff the opportunity to respond to the adequacy of

the search.  Id.  With that information, I can now more readily determine whether an

additional search is necessary.

## II.    ANALYSIS

### A.    The Actual Search Conducted by Defendant

The defendant's attorney, William Davis, filed the affidavit for Faber to detail the

search "for emails from, to, and about Jonathon Peskoff."  See Declaration of William

Davis Concerning Defendant's Production of Peskoff Electronic Mail ("Davis Aff.").  In

March of 2004, prior to the filing of the complaint in this case, Davis conducted an initial

investigation into the location of all of Peskoff's and NextPoint's electronic documents.[2]

Davis Aff. ¶ 5.  Davis found Peskoff's electronic documents in two places: (1) the hard

---

[1]  The so-called "slack space" of a computer is the "unused space at the logical end of an active file's data and the physical end of the cluster or clusters that are assigned to an active file."  United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 46, n. 7 (D.Conn. 2002).  Deleted data, or remnants of deleted data, is often found in a computer's slack space.  Id.

[2]  Davis does not describe in any way this initial investigation, how it differed from the search at issue, or what it entailed.

drive of the computer Peskoff used, and (2) on the Mintz Levin server used to store NextPoint's electronic files.[3]  Davis Aff. ¶ 6.

Davis then caused Mintz Levin's information services department to replicate Peskoff's entire hard drive as of March 2004, a copy of which he produced to Peskoff. Davis Aff. ¶¶ 8-9.  Davis is therefore confident all electronic files found on Peskoff's computer as of March 2004 have been produced.  Davis Aff. ¶ 10.

One month later, in April 2004, Davis also caused Mintz Levin's information services department to archive Peskoff's emails.  Davis Aff. ¶ 11.  The email was stored in a .pst file (standard for archiving Outlook), burned to a DVD, and given to Peskoff in its entirety.[4]  Davis Aff. ¶¶ 12-13.

Peskoff's review of the disks showed only emails from Peskoff's Outlook account; no other NextPoint employee emails were provided.  <u>Plaintiff's Response to Declaration of William Davis, Esq. Concerning Defendant's Production of Electronic Mail</u> ("Pls. Resp."), Exhibit A, Declaration of Frederic T. Spindel Concerning Defendant's Production of Peskoff Electronic Documents ("Spindel Aff.") ¶¶ 6.  Nor were any emails contained in Peskoff's "Sent Items" or "Deleted Items" folder.  <u>Id</u>.  The emails produced included 14 unopened emails in the Inbox, all dated April 14, 2004; received emails dated June 2000 to June 2001 in 65 different subfolders; and approximately 11,000 emails in an "Old Mail" subfolder, 10,436 of which were unopened.  Spindel Aff. ¶¶ 6-7.  All emails in the subfolder were dated between June 25, 2003, and April 14, 2004.  Spindel Aff. ¶ 7.

---

[3]  NextPoint has no server or central repository for electronic files.  Davis Aff. ¶ 7.
[4]  In August and September 2005, following production, Peskoff had various problems reading the data files.  Defendant's counsel points out he graciously provided as many as three additional copies with files stored in various sizes and formats for the plaintiff to access the stored files.  Davis Aff. ¶¶ 14-17.  None of the procedural issues common to the exchange of data formats is relevant to the current issue.

The parties dispute both the factual account of the emails actually produced as well as the availability of other emails not yet produced.  The Court identified five possible locations where Peskoff's emails could reside.  Of the five areas described by the Court where electronic documents may exist, Faber's search only involved two, each of which is questionable in its scope.

1.      *Peskoff's Hard Drive*

The entire hard drive of Peskoff's computer as of a certain date in March 2004 was produced to Peskoff, though no preliminary search of its contents was conducted by Davis or Mintz Levin due to the anticipated cost of such a search.  See Davis Aff. ¶ 28; Defs. Opp. at 6.  The defendant does not oppose such a search of this hard drive by a forensic specialist but only if the plaintiff covers the expense. Davis Aff. ¶ 29.

2.      *Peskoff's Email Account*

According to Davis, Mintz Levin preserved Peskoff's email account in an archive file in April 2004.  Davis Aff. ¶ 11.  The archive is subject to the retention policies for emails in place at the time the archive file was created.  See Davis Aff. ¶ 19.  According to the defendant, alll email in Outlook subfolders was saved indefinitely; messages in the Inbox and Sent box were kept for 180 days; messages in the Deleted folder were retained 7 days.  Davis Aff. ¶¶ 19-20.  Peskoff complains the creation of the archive file in April 2004, a full two months after his departure and Davis's awareness of possible litigation, resulted in inevitable loss of emails.[5]  Pls. Resp. at 5-6.

---

[5] The parties dispute the contents of the archive file provided to the plaintiff.  Plaintiff claims no email is included in the data provided between mid-2001 and mid-2003.  Resolution of this factual dispute in not necessary for the present Order. The Court reserves the right to address the factual dispute at an evidentiary hearing at a later date.

3.      *Other Email Accounts*

The defendant does not describe any additional searches of other email accounts. Davis acknowledges Faber's independent search of his files and emails for responsive documents but does not describe how the search was conducted.  Davis Aff. ¶ 27. Though Davis identifies another NextPoint Management employee who served as assistant to Peskoff and Faber, Ms. Van Aiken, nothing indicates a search of her email account was ever conducted.[6]  Id.  Davis claims that "Mintz Levin searched for every Peskoff e-mail from every possible folder," but a search of Peskoff's files—while possibly capturing emails sent *to* and *from* Peskoff—does not include emails *about* Peskoff as the discovery request legitimately asks.  See Davis Aff. ¶ 26.

4.      *Slack Space on Peskoff's Computer*

The defendant would not pay for a forensic expert to search the slack space of Peskoff's computer, but he offers Peskoff the opportunity to pay to do so if he wishes. Davis Aff. ¶ 29.

5.      *Back-up Tapes of Mintz Levin's Server*

According to the Davis affidavit, Mintz Levin created back-up tapes that were overwritten every 14 days.  Davis Aff. ¶ 30.  After the two-week storage period, tapes are overwritten with new back-up files.  Davis Aff. ¶ 20.  Therefore, Davis states, anything Peskoff seeks dating back two years is long gone.  Davis Aff. ¶ 30.  Peskoff points out that the defendant provided no instruction to retain electronic mail at the time the archive file was created.  Pls. Resp. at 3-4.

---

[6]  The parties further dispute the number of employees who actually worked for NextPoint Management during the relevant time period.  See Pls. Resp. at 6.

In this case, a hard drive, never searched, was produced and the plaintiff's sent and received emails were produced, but (1) there are significant and unexplained gaps in what was produced, and (2) other searches of electronic data that I specifically suggested could be done were not.  Furthermore, all of the unopened emails in the Inbox—a total of fourteen—are dated the same day, a date following plaintiff's departure from NextPoint. The 10,436 emails in the "Old Mail" subfolder are all unopened.  The emails in the "Old Mail" subfolder are for the period June 25, 2003, to April 14, 2004, but the emails in the 65 other subfolders are all dated for the period June 2000 to June 2001.  Thus, there are gaps of several years among the various subfolders with no emails whatsoever during these time periods.  While there may be reasons why this is so, on this record all one can say is that this phenomenon is inexplicable.

Defendant has not challenged my suggestion of the additional searches that could be performed to ensure a more comprehensive analysis of available electronic data. Yet, defendant did not conduct any of these possible searches.  As I pointed out in my previous opinion, written before the new federal rules regarding electronic discovery became effective, the producing party has the obligation to search available electronic systems for the information demanded.  Mem. Opinion of 5/11/06 at 8 (quoting McPeek v. Ashcroft, 202 F.R.D. 31, 32 (D.D.C. 2001)).  The new Federal Rule of Civil Procedure pertaining to electronically stored information makes this explicit.  Under the new pertinent rule, the producing party is relieved of producing specifically identified *inaccessible* data only upon a showing of undue burden or cost.  Fed. R. Civ. P. 26(b)(2)(B). Even then, the court may order discovery of the data identified as inaccessible "if the requesting party shows good cause, considering the limitations of

Rule 26(b)(2)(C)," i.e., the rule that balances the costs of the discovery demanded against its benefits.  Id. See Fed. R. Civ. P. 26(b)(2)(B), advisory committee's note. The obvious negative corollary of this rule is that *accessible* data must be produced at the cost of the producing party; cost-shifting does not even become a possibility unless there is first a showing of inaccessibility. Thus, it cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort to find what is necessary. Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 283-84 (S.D.N.Y. 2003). See also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978) (presumption is that responding party must bear the expense of complying with discovery requests).

The defendant must therefore conduct a search of all depositories of electronic information in which one may reasonably expect to find all emails to Peskoff, from Peskoff, or in which the word "Peskoff" appears.  Once the search is completed, defendant must make the results available to plaintiff in the same format as the electronically stored information was previously made available.  Defendant must also file a statement under oath by the person who conducts the search, explaining how the search was conducted, of which electronic depositories, and how it was designed to produce and did in fact produce all of the emails I have just described.  I must insist that the person performing the search have the competence and skill to do so comprehensively.  An evidentiary hearing will then be held, at which I expect the person who made the attestation to testify and explain how he or she conducted the search, his or her qualifications to conduct the search, and why I should find the search was adequate.

**III.     CONCLUSION**

Therefore, defendant Michael A. Faber is hereby **ORDERED** to conduct a search of electronically stored data in conformance with this Memorandum Opinion.  **IT IS FURTHER ORDERED** that the search shall be completed by March 23, 2007, with files produced to plaintiff in the appropriate formats.  **IT IS FURTHER ORDERED** that a statement, taken under oath, by the person who conducted the search as to its details must be filed with the Court within ten days following its completion.  **IT IS FURTHER ORDERED** that an evidentiary hearing is set in this matter for April 5, 2007, at 10:00 AM, at which time the same person responsible for conducting the ordered search must be present to testify.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE


Dated: February 21, 2007